Mid-America Apartment Communities, Inc.

Whistleblower Policy[1]

Mid-America Apartment Communities, Inc., a Tennessee corporation (the "Company"), has adopted this policy to encourage employees to report to responsible persons possible (i) violations of law, including the securities laws, (ii) accounting irregularities and (iii) other suspected wrongdoing, including their own. The goal of this policy is to discourage illegal activity and business conduct that damages the Company's good name, franchise, business interests, and its relationships with shareholders, suppliers, residents and the community at large. While the Company does not encourage frivolous complaints, it does want any officer, employee or agent of the Company (each an "Affected Person"),[2] who knows of a Harmful Violation or potentially Harmful Violation (defined below) to contact a representative of the Company through one of the methods contained in Section 7. A "Harmful Violation" includes the following:

(1) violations of law, including any rule of the Securities and Exchange Commission, federal laws related to fraud against the Company's shareholders, and the laws and regulations of any jurisdiction in which the Company operates;

(2) violations of Company policies and statutory or other requirements for good corporate governance;

(3) improper accounting entries, violations of internal accounting controls or improper auditing matters;

(4) any other matter, which in the good faith belief of any Affected Person, could cause harm to the business or public position of the Company;

(5) any attempt to conceal a potential Harmful Violation or evidence of a potential Harmful Violation; or

(6) any Retaliation (defined below) for any report, complaint, allegation or other disclosure made pursuant to this policy (a "Disclosure").

---

[1] Section 806 of the Sarbanes-Oxley Act of 2002 (the "Act") contains the first federally-imposed, broad-based whistleblower protection. Generally speaking, any company with securities registered under Section 12 of the Securities Exchange Act is subject to civil penalties if an employee is discharged, demoted, suspended, threatened, harassed or otherwise discriminated against because such employee provided information, caused information to be provided or otherwise assisted with an investigation related to fraudulent acts. Moreover, Section 1107 of the Act provides criminal penalties of up to 10 years imprisonment plus a fine for any retaliation resulting from the cooperation with a law enforcement officer for providing truthful information relating to the commission or possible commission of any federal offense.

[2] This list contains the protected "class" contained in Section 806.

1. **General Policy.**

Any Affected Person who, in Good Faith, makes a Disclosure pursuant to this policy with respect to a Harmful Violation or potential Harmful Violation is referred to as a "Whistleblower" and is protected from any Retaliation by the Company. "Good Faith" means that the employee has a reasonably held belief that the disclosure made by the Affected Person is true and has not been made either for personal gain or for any ulterior motive.

The Company notes that Sections 806 and 1107 of the Sarbanes-Oxley Act of 2002 provides certain legal protection to whistleblowers. Under Section 806, the Company and its officers, employees, vendors, suppliers and agents cannot discharge, demote, suspend, threaten, harass, or in any other manner discriminate (collectively, "Retaliate" or "Retaliation") against employees who provide information in investigations – including internal investigations – into certain types of violations of the securities laws and regulations, or who file proceedings relating to similar violations. Additionally, under Section 1107, any person who

> knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both.

2. **Purpose of the Policy.**

The Company has adopted this policy in order to:

   (a) cause Harmful Violations to be disclosed before they can disrupt the business or operations of the Company, or lead to serious loss,

   (b) promote a climate of accountability with respect to Company resources, including its employees, and

   (c) ensure that no Affected Person should feel at a disadvantage in raising legitimate concerns.

This policy provides a means whereby Affected Persons can safely raise, internally and at a high level, serious concerns and disclose information that the Affected Person believes in good faith could cause a Harmful Violation. This policy does not apply to all grievances, such as those related to terms of employment or those concerns that are addressed by the Company's policies on anti-discrimination or sexual harassment.

3. **Affected Persons Protected.**

This policy and the related procedures offer protection from Retaliation to Affected Persons, who make any Disclosure with respect to matters that are, or could give rise to, Harmful Violations, provided the Disclosure is made:

- In Good Faith;

- In the reasonable belief of the individual making the Disclosure that the conduct or matter covered by the Disclosure could give rise to a Harmful Violation, and

- Pursuant to the procedures contained in Section 7 below.

No complaint that satisfies these conditions shall result in any Retaliation or threat of Retaliation against the complainant by the Company or any officer, employee, contractor, subcontractor or agent of the Company. Any acts of Retaliation against a Whistleblower shall be treated by the Company as a serious violation of Company policy and could result in discharge.

4.  **Confidentiality of Disclosure.**

The Company will treat all Disclosures by Whistleblowers as confidential and privileged to the fullest extent permitted by law. The Company will exercise particular care to keep confidential the identity of any Affected Person making a Disclosure under this procedure until a formal investigation is launched. Thereafter, the identity of the Affected Person making the Disclosure may be kept confidential, if requested, unless such confidentiality is incompatible with a fair investigation, unless there is an overriding reason for identifying or otherwise disclosing the identity of the Whistleblower or unless such disclosure is required by law. In this instance, the Affected Person making the Disclosure will be so informed in advance of his or her being identified with the Disclosure. Where disciplinary proceedings are invoked against any individual following a Disclosure under this procedure, the Company will normally require the name of the person making the Disclosure to be disclosed to the person subject to such proceedings.

The Company encourages individuals to put their name to any Disclosure they make, but any Affected Person may also make anonymous Disclosure as provided in Section 7.1(e) below. In responding to an anonymous Disclosure, the Company will pay due regard to fairness to any individual named in the Disclosure, the seriousness of the issue raised, the credibility of the information or allegations in the Disclosure and the prospects of an effective investigation and discovery of evidence.

Investigations will be conducted as quickly as possible, taking into account the nature and complexity of the Disclosure and the issues raised therein.

5.  **Unsubstantiated Allegations.**

If an Affected Person makes a Disclosure in Good Faith pursuant to this policy and any facts alleged are not confirmed by subsequent investigation, no action will be taken against the Whistleblower. In making a Disclosure, all individuals should exercise due care to ensure the accuracy of the information disclosed.

If after investigation a matter raised under this procedure is found to be without substance <u>and</u> to have been made for malicious or frivolous reasons, the person making the Disclosure could be subject to disciplinary action.

Where alleged facts disclosed pursuant to this policy are not substantiated (a) the conclusions of the investigation will be made known both to the person who made the Disclosure and to the person(s) against whom any allegation was made in the Disclosure and (b) all papers relating to the allegation and investigation will be removed from the record.

**6.     Follow-Up.**

A report of all substantial Disclosures and any subsequent actions taken will be made to the Audit Committee in detail, where the Disclosure relates to an issue or matter within its purview, and in summary in all other cases.

The conclusion of any investigation will be communicated to the person or persons against whom the Disclosure is made and to the person making the Disclosure.

**7.     Procedures.**

7.1    Any Disclosure made by an Affected Person under this policy must be submitted to one of the following as appropriate:

      (a)     to the Affected Person's immediate supervisor,

      (b)     directly to the person designated by the Company as the chief compliance officer of the Company;

      (c)     directly to the Chief Financial Officer or Outside General Counsel;

      (d)     directly to the person performing the Company's internal audit function, or

      (e)     by using the Company's anonymous "Quality Assurance Line" at 1-866-481-1918.

Upon receiving a Disclosure, the person receiving such Disclosure shall immediately deliver a copy of the Disclosure to the Outside General Counsel, who shall retain a log of Disclosures and a file for each Disclosure, which file shall be maintained in a secure location to protect the confidentiality of the Disclosure. A sample Complaint Form is attached hereto as Exhibit A, which is recommended for use by persons receiving Disclosures and/or the Outside General Counsel in documenting matters covered by Disclosures. The Outside General Counsel, where appropriate, shall offer counsel to the person receiving a Disclosure as to the proper response to the Disclosure, such as, but not limited to, prompt referral to the Audit Committee, commencement of an investigation, engagement of outside counsel or professionals, and/or communication with the Whistleblower.

7.2  An Affected Person should expect some response to the Disclosure no later than two weeks after the Disclosure, unless the Affected Person believes in Good Faith that conditions warrant a quicker reply, in which case the Affected Person shall detail those conditions as part of his or her initial Disclosure and suggest expedited treatment.

7.3  An Affected Person, who is not satisfied with the response after following the procedure set out in Section 7.1 or who has not received a response in the time period contained in Section 7.2, may invoke this Section. The Affected Person must continue to discuss the Disclosure with the person(s) to whom directed. However, the Disclosure shall thereafter also be directed, in writing, and confidentially, to the Audit Committee. The Audit Committee shall then make a preliminary investigation of the facts alleged in the Disclosure and may, in its discretion, report in writing to the Outside General Counsel, with a request that the Outside General Counsel investigate further and report to the Audit Committee in a period of time specified by the Chair of the Audit Committee. The Outside General Counsel may appoint another person to undertake the preliminary investigation, provided that the findings and conclusions of the person so appointed shall be reported to, and endorsed by, the Outside General Counsel before the report is made to the Audit Committee.

7.4  If on preliminary examination the concern, issue or facts raised or alleged in any Disclosure are judged to be wholly without substance or merit, the matter shall be dismissed and the Whistleblower informed of the decision and the reasons for such dismissal. If it is judged that the allegation(s) or issue(s) covered in the Disclosure have merit, the matter shall be dealt with in accordance with this policy, the Company's normal disciplinary procedures and/or as otherwise may be deemed appropriate according to the nature of the case. The outcome of the investigation will be reported to the Whistleblower.

7.5  Subject to Section 7.4, if any Disclosure relates to the alleged conduct of a director or executive officer of the Company, the Disclosure shall be referred to the Audit Committee for investigation. It is highly recommended that the Audit Committee retain independent counsel to investigate the facts and allegations contained in such Disclosure, as well as in all cases where a Disclosure contains allegations of any accounting or financial reporting irregularity or impropriety, whether or not the allegation implicates an executive officer or director.

7.6  All Disclosures received by means of the Quality Assurance Line shall be confidential as provided in this policy. The identity of the person making will not be disclosed to any other person unless the person making the Disclosure shall consent to disclosure of his identity. Notwithstanding the foregoing, if the person making the Disclosure by means of the Quality Assurance Line shall disclose his or her identity, he or she should be informed that his or her identity may be required to be disclosed by law in certain situations, such as where a governmental entity initiates an investigation of allegations contained in the Disclosure. In addition, the person making the Disclosure should be informed that his or her identity will be disclosed if, after investigation, it is reasonably

determined that the Disclosure was made maliciously or recklessly. Disclosure of any Harmful Violation may be made by means of the Quality Assurance Line. All such Disclosures made in this manner shall be reported to the Outside General Counsel for investigation.

**8.    Website Publication.**

This policy shall be posted on the Company's website.

**9.    Annual Review and Reporting.**

The Outside General Counsel shall make a quarterly report to the Audit Committee of (i) the number of Disclosures made, (ii) the number of investigations commenced in response to Disclosures, (iii) the number of wrongdoings discovered, and (iv) all disciplinary actions taken in response to matters discovered through Disclosures. This policy will be reviewed annually by the Audit Committee after consultation with the senior compliance officer, taking into account the effectiveness of the policy in promoting proper disclosure, but with a view to minimizing the opportunities to cause improper investigations.

# EXHIBIT A

## COMPLAINT FORM

Case Number: [Legal][Audit Committee][Hotline]-_____

Name:_____    Tel:_____

Department:_____    E-mail:_____

Supervisor:_____

Type of Violation:  ☐ Legal    ☐ Accounting/Auditing    ☐ Retaliation

Date Caller became aware of potential violation:_____

Violation is:  ☐ Ongoing    ☐ Completed    ☐ Unclear whether ongoing or completed

Department suspected or violation: _____

Individuals suspected of violation: _____

Describe all of the relevant facts of the violation:
_____
_____
_____

How did Caller become aware of the violation:
_____
_____
_____

Steps taken by Caller prior to contact:
_____
_____

Who, if anyone, may be harmed or affected by the violation?
_____

If the violation is legal, estimate the amount of loss to the Company as a result of the violation:
Actual _____    Potential _____

If the violation relates to accounting/auditing matters, estimate the amount of the misreporting and indicate the affected category (or categories) of misreporting:
Amount_____
Category:    ☐ Assets        ☐ Liabilities    ☐ Expenses
             ☐ Revenues      ☐ Valuation      ☐ Equity

Provide any suggestions for remedying the violation:
_____
_____
_____

Do you wish to be contacted by the investigating officers regarding the status of the investigation?   ☐ Yes    ☐ No